BKOCKENBROUGH, J.,
delivered the opinion of the Court:
The Examining Court of Caroline county remanded tó the Superior Court of that county for trial, for a crime of great malignity, a free man of colour by the name of John Tyree. He was indicted there for a crime, and being arraigned, he pleaded “not guilty” to the Indictment, and was remanded to jail. On the following day a citizen of another county, Mr. William Tompkins, petitioned the Court for a Writ of Habeas Corpus to bring before the Court a slave of his, by the name of Ar-mistead, who was then detained in jail, charged with a crime, stating that he could not be legally tried for the same in that Court. The Writ was issued, and the Jailor made return, that the said person was committed to his custody as a free man of colour, by the name of John Tyree, and made the record of the Examining Court a part of his return. The petitioner informally traversed so much of the return as stated that he was a free man of colour, and prayed the Court to enquire into the fact of his being his slave, and to quash the Indictment. The evidence of witnesses was then heard, tending to support the allegation of the petitioner, and the questions arising in this Case were adjourned to this Court.
A slave cannot be properly tried before a Superior Court of Law : he is to be tried by the Justices of the County Court, who, for that purpose, constituted a Court of Oyer and Terminer. When a black man is brought before an Examining Court, it is the duty of that Court to enquire whether he be a free man, or a slave ; if he be a slave, they cannot send him on for trial to the Superior Court. If they send him on trial as a free man, and he be indicted as such, 'there seems to be only one mode by which the fact, whether he be a slave or not, can be regularly tried in the Superior Court. It is matter of abatement, and the person arraigned may plead it, and object to the jurisdiction of the Court. On such plea to the jurisdiction, if an issue be taken, a jury may enquire into and find a verdict on the fact; '-and if they find him to be a slave, the Court will proceed no further with the case, but send him to the proper Tribunal. If he does not object to the jurisdiction on that ground, can any other person be allowed to interplead, rif we may use such expression,) and prove to the Court that it has no jurisdiction ? It may be said, that every black man is prima facie a slave, and that as it so appears to the Superior Court, that Court ought first to enquire into the fact, before it will take cognizance of it; that presumption is, however, repelled by the judgment of the Examining Court, which declares him to be a free man, and that judgment must be considered as binding, until the contrary appears in some legal mode. If a third person can claim him as his slave, by what method of trial can it be ascertained ? Can the Court be called on to hear evidence, and decide on the fact ? This- is not the duty of the Court: its duty is to decide on the Law, not on facts. Can a jury be impanelled to try the fact ? If so, who are parties to the issue, if there be one ? The alleged master, and the jailor. Whilst this- issue is then trying, the accused person stands before the Court in vinculis, is no party to the enquiry, and yet is bound by the verdict which may be found against him ! The Court has not seen any Law by which such an anomalous proceeding can be justified. - It is true, there are cases in which a similar proceeding is allowed, but under different circumstances. When an accused person is brought before a Court, and there is *227 reason to believe that he is a lunatic, or an idiot; or if the accused stand mute, and will not answer to the Indictment, the Court may impanel a jury to decide whether he be non compos mentis, or whether he be mute from obstinacy, or from the visitation of God ; and if they find for the accused, the trial will be suspended. There is, however, this great difference between the cases. Those proceedings are allowed in favorem vital ; but if it could be allowed in this case, it would be against life. The consequence of sustaining the objection to the jurisdiction here, would be, that instead of punishing him in the Penitentiary, he might be condemned to lose his life. The Court cannot, therefore, convert a principle dictated by humanity into an instrument of cruelty.
We enquired into the ancient doctrine of the claim of cognizance by the Courts of the two Universities in .England, and by other Courts having certain exclusive jurisdiction *in cases of felony. 4 Black. Com. 276-9. But we are of opinion, that that doctrine, besides being obsolete, will not apply to this case, for several reasons. The Justices of the County Court constituted the only Tribunal who could claim the cognizance in this case: but those Justices have already disclaimed it, by adjudging him to be a free man. That claim, when allowed in England, does not draw along with it any higher punishment; in this case it does, and therefore ought not to be allowed.
For these reasons, the following is to be entered as the judgment of this Court :
“It is the opinion of this Court, and it doth decide, that as the prisoner, John Tyree, did not plead in abatement to the jurisdiction of the said Superior Court of Law, no evidence whatever was admissible in support of the said William Tompkins’s application, for the purpose of proving that the said prisoner is not a free man, but the slave of the said petitioner ; and that the record of the Examining Court, remanding the said prisoner for trial as a free man of colour, (there being no such plea in abatement, as aforesaid,) is to be taken as conclusive proof, quoad the trial of the prisoner in the Superior Court, that he is free. The other questions need not be answered ; all of which is ordered to be certified.”